IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUSSELL W. BLANCHARD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:26-cv-2104 |
| | ) | |
| FOREST PRESERVE DISTRICT of COOK COUNTY, and THERESA ODUM, | ) ) | |
| | ) | |
| Defendants. | ) | JURY DEMAND |

**COMPLAINT**

**NOW COMES** the Plaintiff, RUSSELL W. BLANCHARD by and through his undersigned attorney, Arthur R. Ehrlich of the Law Offices of GOLDMAN & EHRLICH, CHTD., and complaining of Defendants, FOREST PRESERVE DISTRICT OF COOK COUNTY and THERESA ODUM,, states as follows:

1. This is an action brought for damages sustained by Plaintiff based on Defendants' retaliation in violation of his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et. seq*. ("FMLA"). This action is also based on violations of procedural and substantive Due Process and Liberty interests under 42 U.S.C. §1983 against Theresa Odum in her individual capacity.

2. This Court has jurisdiction pursuant to 29 U.S.C. § 2601 *et. seq*., 28 U.S.C. § 1331 and 42 USC §1983. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the actions giving rise to the claim occurred in the Northern District of Illinois and the parties reside in Cook County.

3. At all times relevant to this complaint, Plaintiff was a resident of the State of Illinois

1

residing in the Northern District of Illinois.

4. Defendant FOREST PRESERVE DISTRICT OF COOK COUNTY ("FOREST PRESERVE DISTRICT") is a governmental entity organized under the laws of the State of Illinois with its principal place of business in Cook County.

5. Defendant Theresa Odum ("ODUM") was, at all relevant times, Chief of Police of the Forest Preserve District of Cook County's Police Department, residing in the Northern District of Illinois. ODUM is being sued in her individual capacity and while acting under of color of state law in her position as Chief of Police to pursue malicious acts of retaliation against Plaintiff.

6. Plaintiff began his employment as Deputy Commander with the FOREST PRESERVE DISTRICT's Police Department in January 2024. Plaintiff worked as a sworn law enforcement police officer for other government entities and municipalities before working for Defendant.

7. Plaintiff maintained an unblemished record throughout his law enforcement career, including his time with the FOREST PRESERVES DISTRICT. He received excellent performance ratings during his tenure with the FOREST PRESERVE DISTRICT.

## COUNT I
## FMLA RETALIATION AGAINST THE FOREST PRESERVE DISTRICT

8 In February of 2025, Plaintiff took FMLA leave to undergo hand surgery. He notified Human Resources (HR) on May 17, 2025, that he would be returning to work on May 18, 2025, and provided medical documentation clearing his return to work for May 19, 2025.

9. Shortly before returning from FMLA leave, Plaintiff learned that Chief Odum planned to reassign him from the Southeast District which was 20 minutes from his home and where he had

been assigned since he began working for Defendant, to the Northwest District which was approximately a 90-minute commute from his home.

10. The Deputy Commander that had been assigned to the Northwest District, which was close to his residence was being assigned by Defendant to the Southeast District, which made that Deputy Commander's commute much longer. This Deputy Commander had also taken FMLA leave prior to this transfer.

11. Plaintiff was also informed that many of his duties, including responsibility for the drone program, the FTO program, and department policy updates, would be reassigned to another Commander. The drone program involved extra compensation.

12. Plaintiff learned from a superior officer that Defendant, through Chief Odum, intended to punish Plaintiff and the other Deputy Commander being transferred because they had each taken FMLA leave. This punishment included reassigning Plaintiff and the other Deputy Commander to locations that were further away from their residences without any valid reason.

13. When Plaintiff applied for FMLA, Chief Odum demanded that Plaintiff provide her with his FMLA medical documentation. When Plaintiff objected to this improper request the Chief became angry.

14. Plaintiff provided all requested medical information to Defendant's HR department before his FMLA was approved by Defendant.

15. Plaintiff felt compelled to resign from his position with the FOREST PRESERVE DISTRICT based on Defendant's forced transfer to a different District, removal of some of his duties, and the threats that Chief Odum intended to punish Plaintiff for taking FMLA leave.

16. On May 25, 2025, at 3:25 p.m., Plaintiff submitted his resignation to Chief Odum.

After Chief Odum accepted his resignation, Odum claimed for the first time that there were IAD investigations against Plaintiff.

17. The Chief also told Plaintiff that a complaint would be filed against him with the Illinois Law Enforcement Training and Standards Board (ILETSB) accusing Plaintiff of resigning while he was still under investigation.

18. Plaintiff was never informed of any IAD complaint, proposed discipline, or of any investigation before notifying Defendant of his resignation.

19. Plaintiff immediately informed Defendant on May 25, 2025, that he had no prior knowledge of any complaint or active investigation against him at the time he submitted his resignation to Chief Odum. He further informed Defendant, through Odum, that any complaint to ILETSB stating that he resigned with knowledge of a pending complaint and investigation would be false, damaging to his career, and would constitute additional harassment.

20. Defendant, through Chief Odum, notified ILETSB falsely stating that Plaintiff resigned while under investigation for IAD complaints despite knowing that Plaintiff was never informed of any pending IAD complaint at the time nor having knowledge of any pending investigation when he resigned.

21. Defendant, through Chief Odum and Deputy Chief Muniz, began to investigate Plaintiff only after Plaintiff took FMLA leave. The investigation was purportedly based on Plaintiff's use of his FMLA despite having provided proper medical documentation showing that he was taking FMLA because of his hand surgery.

22. There was no evidence to prove that Plaintiff misused his FMLA leave, nor engaged in any other misconduct that would warrant any notice to ILETSB, nor was Plaintiff made aware of

any such complaints until after he gave notice of his resignation.

23. Employees who had in fact engaged in more serious misconduct, who were accused of falsifying official documents, and were suspended were not reported to ILETSB by Defendant. These officers had not taken FMLA leave.

24. Complaints against police officers that are reported to the ILETSB are disclosed to their prospective employers during the hiring process when they submit documentation indicating their intent to hire a police officer as part of the vetting process for hiring police officers in Illinois.

25. A police department must submit documentation to the ILETSB explaining why it intends to hire a police officer who has a complaint filed against them with the ILETSB. Law enforcement agencies often will not hire a police officer who has a complaint filed against them with ILETSB.

26. Plaintiff was recommended for a promotion to Commander at another police department where he had been working part time in 2025. Plaintiff lost this promotion opportunity because Defendant, through Chief Odum, filed a false complaint against Plaintiff with the ILETSB.

27. The complaint Defendant filed with the ILETSB, through Chief Odum, damaged Plaintiff's reputation and caused him personal and professional embarrassment. Plaintiff has no way to challenge the complaint Defendant filed with the ILETSB.

28. Plaintiff engaged in protected activity under the FMLA by taking approved medical leave for hand surgery in February 2025.

29. After Plaintiff engaged in protected FMLA activity, Defendant retaliated against him by reassigning him to a location with a much longer commute, removing job duties and responsibilities, and filing a complaint with the ILETSB which falsely accused him of resigning with

knowledge that there was a pending investigation against him. These acts materially affected the terms and conditions of his employment and professional reputation.

30. As a direct and proximate result of Defendant's retaliatory actions for taking FMLA leave, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, reputational harm, and suffered emotional distress. Plaintiff seeks damages and other relief as permitted under the FMLA.

31. Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

    A.    Actual damages in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) and prejudgment interest;

    B.    Liquidated damages as authorized under the FMLA;

    C.    Ordering Defendant to withdraw the complaint filed with the ILETSB and remove all discipline in Plaintiff's personnel file;

    D.    Attorney's fees and costs; and

    E.    Such other relief as this Court deems appropriate.

**COUNT II**
**FMLA RETALIATION AGAINST CHIEF ODOM**

1-8. Plaintiff realleges ¶¶ 1-8 of Count I, above, as and for ¶¶ 1-8 of count II.

9. Shortly before returning from FMLA leave, Chief ODUM made the decision to reassign Plaintiff from the Southeast District, which was 20 minutes from his home and where he had been assigned since he began working for Defendant, to the Northwest District which was approximately a 90-minute commute from his home.

10. ODUM also made the decision to assign another Deputy Commander from the Northwest District, which was close to his residence to the Southeast District, which made that Deputy Commander's commute much longer. This Deputy Commander had also taken FMLA leave prior to this transfer. ODUM forced Plaintiff and the other Deputy Commander to switch districts as a punishment for taking FMLA leave.

11. ODUM also made the decision to remove many of Plaintiff's duties as he was planning to return from his FMLA leave, including responsibility for the drone program, the FTO program, and department policy updates. The drone program involved extra compensation.

12. Chief ODOM intended to punish Plaintiff and the other Deputy Commander who took FMLA leave because they had each taken FMLA leave. This punishment included reassigning Plaintiff and the other Deputy Commander to locations that were further away from their residences without any valid reason.

13. When Plaintiff applied for FMLA, CHIEF ODUM demanded that Plaintiff provide her with his FMLA medical documentation. When Plaintiff objected to her improper request ODUM was angry though she had no right to see this medical documentation.

14. Plaintiff provided all requested medical information to the FOREST PRESERVE DISTRICT's HR department before his FMLA was approved and was not required to provide medical documentation to the ODUM, nor was she entitled to see his medical documentation.

15. Plaintiff felt compelled to resign from his position with the Forest Preserve District based on ODUM'S forced transfer of Plaintiff to a different District, removal of some of his duties, and ODUM's threats that she intended to further punish Plaintiff for taking FMLA leave.

16. On May 25, 2025, at 3:25 p.m., Plaintiff submitted his resignation to CHIEF ODUM.

After ODUM accepted his resignation, she claimed for the first time that there were IAD investigations against Plaintiff which had not been previously disclosed to him.

17. ODUM also told Plaintiff that a complaint would be filed against him with the Illinois Law Enforcement Training and Standards Board (ILETSB) accusing Plaintiff of resigning while he was still under investigation.

18. Plaintiff was never informed of any IAD complaint, proposed discipline, or investigation before notifying ODUM of his resignation.

19. Plaintiff immediately informed ODUM on May 25, 2025, that he had no prior knowledge of any complaint or active investigation against him at the time he submitted his resignation to her. He further informed ODUM that any complaint to ILETSB stating that he resigned with knowledge of a pending complaint and investigation would be false, would damage his career, and constituted additional harassment from her.

20. ODUM notified ILETSB falsely stating that Plaintiff resigned with knowledge that he was under investigation for IAD complaints despite knowing that Plaintiff was never informed of any pending IAD complaint at the time nor having knowledge of any pending investigation when he resigned.

21. ODUM directed Deputy Chief Muniz to investigate Plaintiff only after Plaintiff took FMLA leave. The investigation was purportedly based on Plaintiff's use of his FMLA despite having provided proper medical documentation showing that he was taking FMLA because of his hand surgery.

22. There was no evidence to prove that Plaintiff misused his FMLA leave, nor engaged in any other misconduct that would warrant any notice to ILETSB, nor was Plaintiff made aware of

any such complaints until after he gave notice of his resignation.

23. Employees who engaged in misconduct, falsified official documents, and were suspended, were not reported to ILETSB by ODUM. These officers had not taken FMLA leave.

24. Complaints against police officers that are reported to the ILETSB are disclosed to prospective employers during the hiring process when they submit documentation indicating their intent to hire a police officer. This is part of the vetting process for hiring police officers in Illinois.

25. A police department must submit documentation to the ILETSB explaining why it intends to hire a police officer who has a complaint filed against them with the ILETSB. Law enforcement agencies often will not hire a police officer who has a complaint filed against them with ILETSB.

26. Plaintiff was recommended for a promotion to Commander at another police department where he had been working part time in 2025. Plaintiff lost this promotion opportunity because ODUM filed a false complaint against Plaintiff with the ILETSB.

27. The complaint Defendant filed with the ILETSB by ODUM damaged Plaintiff's reputation and caused him personal and professional embarrassment. Plaintiff has no way to challenge the complaint ODUM filed with the ILETSB.

28. Plaintiff engaged in protected activity under the FMLA by taking approved medical leave for hand surgery in February 2025.

29. After Plaintiff engaged in protected FMLA activity, ODUM used her position as Chief of Police to retaliate against him by reassigning him to a location with a much longer commute, removing job duties and responsibilities, and filing a complaint with the ILETSB which falsely accused him of resigning with knowledge that there was a pending investigation against him.

These acts materially affected the terms and conditions of his employment and professional reputation.

30. As a direct and proximate result of ODUM's retaliatory actions for taking FMLA leave, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, damage to his reputation, and suffered emotional distress. Plaintiff seeks damages and other relief as permitted under the FMLA.

31. Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

    A. Actual damages in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) and prejudgment interest;

    B. Liquidated damages as authorized under the FMLA;

    C. Ordering Defendant to withdraw the complaint filed with the ILETSB and remove all discipline in Plaintiff's personnel file;

    D. Attorney's fees and costs; and

    E. Such other relief as this Court deems appropriate.

## COUNT III
## §1983 PROCEDURAL DUE PROCESS AND LIBERTY INTEREST AGAINST DEFENDANTS

1-14. Plaintiff realleges ¶¶ 1-14 of Count II, above, as and for ¶¶ 1-14 of count III.

15. Chief ODOM used her position as Chief of Police for Defendant FOREST PRESERVE DISTRICT, while acting under color of state law, to punish Plaintiff for taking leave pursuant to a federal statute, the FMLA, and using accrued and earned paid time off which was provided pursuant to state and local law and regulations.

16. Plaintiff had a property and liberty interest pursuant to the FMLA to take FMLA leave and his accrued and earned paid time off without fear of retaliation for using these legally protected rights. Plaintiff also had a property interest in taking his accrued and earned paid time off and paid sick leave which was provided as part of his rights and benefits through the Defendant FOREST PRESERVE DISTRICT and protected by state and county laws and regulations without fear of retaliation.

17. Plaintiff had a liberty interest to be free from Defendants disclosing false and damaging information to the ILETSB without providing Plaintiff with proper notice and opportunity to challenge any false information before it was disclosed to the ILETSB.

18. Plaintiff felt compelled to resign from his position with the Forest Preserve District based on ODUM'S forced transfer of Plaintiff to a different District, removal of some of his duties, and ODUM's threats that she intended to punish Plaintiff further for exercising his rights to FMLA leave and using accrued paid sick time.

19. On May 25, 2025, at 3:25 p.m., Plaintiff submitted his resignation to CHIEF ODUM. After ODUM accepted his resignation, she claimed for the first time that there were IAD investigations against Plaintiff which had not been previously disclosed to him.

20. ODUM also told Plaintiff that a complaint would be filed against him with the Illinois Law Enforcement Training and Standards Board (ILETSB), accusing Plaintiff of resigning with knowledge that he was under investigation.

21. Plaintiff was never informed of any IAD complaint, proposed discipline, or any investigation before notifying ODUM of his resignation.

22. Plaintiff immediately informed ODUM on May 25, 2025, that he had no prior

11

knowledge of any complaint or active investigation against him at the time he submitted his resignation. He further informed ODUM that any complaint to ILETSB stating that he resigned with knowledge of a pending complaint and investigation would be false, would damage his career, and constituted additional harassment.

23. ODUM notified ILETSB falsely stating that Plaintiff resigned with knowledge that he was under investigation for IAD complaints despite knowing that Plaintiff was never informed of any pending IAD complaint nor having knowledge of any pending investigation when he gave notice of his resignation.

24. ODUM failed to provide Plaintiff with proper notice or opportunity to challenge the alleged complaints and investigations that were allegedly occurring before he submitted his resignation and before ODUM falsely informed ILETSB that Plaintiff had resigned while complaints and investigations were pending against him.

25. Plaintiff subsequently learned after his resignation that ODUM directed Deputy Chief Muniz to investigate Plaintiff's use of FMLA. There was no basis for this investigation as Plaintiff provided proper medical documentation showing that he was taking FMLA and paid sick leave because of his hand surgery and his FMLA was approved after a review of his application for FMLA.

26. There was no evidence to prove that Plaintiff misused his FMLA or paid sick leave, nor engaged in any other misconduct that would warrant any notice to ILETSB, nor was Plaintiff made aware of any such complaints until after he gave notice of his resignation.

27. Employees who engaged in misconduct, falsified official documents, and were suspended, were not reported to ILETSB by ODUM. These officers had not taken FMLA leave.

28. Complaints against police officers that are reported to the ILETSB are disclosed to

prospective employers during the hiring process when they submit documentation indicating their intent to hire a police officer. This is part of the vetting process for hiring police officers in Illinois.

29. A police department must submit documentation to the ILETSB explaining why it intends to hire a police officer who has a complaint filed against them with the ILETSB. Law enforcement agencies often will not hire a police officer who has a complaint filed against them with ILETSB.

30. Plaintiff was recommended for a promotion to Commander at another police department where he had been working part time in 2025. Plaintiff lost this promotion because ODUM filed a false complaint against Plaintiff with the ILETSB.

31. The ILETSB discloses all complaints filed with the ILETSB to any hiring police department. Defendants knew that filing this stigmatizing complaint against Plaintiff with ILETSB would damage Plaintiff's career as a law enforcement officer, and ODUM knew her complaints filed with ILETSB were false as Plaintiff had no knowledge of any pending complaints or investigations when he resigned.

32. The complaint Defendants filed with the ILETSB by ODUM damaged Plaintiff's reputation and caused him professional and personal embarrassment. Loss of future income and opportunities for promotions, and created a stigma on what had been an unblemished record as a law enforcement officer. Plaintiff has no way to challenge the complaint ODUM filed with the ILETSB.

33. Defendants' actions violated 42 USC §1983 by depriving Plaintiff of his procedural due process rights under §1983 to be free of stigmatizing and false complaints filed with the ILETSB without an opportunity to challenge the false claims and complaints.

34. Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

    A.    Actual damages for violating Plaintiff's rights under 42 USC §1983;

    B.    Ordering Defendant to withdraw the complaint filed with the ILETSB and remove all discipline in Plaintiff's personnel file;

    C.    Provide Plaintiff the right to challenge the false allegations made against him which were filed with the ILETSB

    D.    Attorney's fees and costs; and

    E.    Such other relief as this Court deems appropriate.

## COUNT IV
## §1983 SUBSTANTIVE DUE PROCESS VIOLATIONS AGAINST ODUM

1-14.    Plaintiff realleges ¶¶ 1-14 of Count II, above, as and for ¶¶ 1-14 of count III.

15.    Chief ODOM used her position as Chief of Police for Defendant FOREST PRESERVE DISTRICT, while acting under color of state law, to punish Plaintiff exercising his rights under the FMLA and using his right to earned and accrued paid leave through his employment with the Forest Preserve District which was provided to Plaintiff as a matter of right, and for refusing her improper request for his medical documentation.

16.    Plaintiff had a property interest under the FMLA to take FMLA leave and for exercising his rights to privacy without fear of retaliation. Plaintiff also had a property interest in taking earned and accrued paid time off and paid sick leave which was provided as part of his rights and benefits through the Defendant FOREST PRESERVE DISTRICT and as required under state and county law and regulations without fear of retaliation.

17.    Plaintiff had a right to due process to be free from ODUM disclosing false and

14

damaging information to the ILETSB without providing Plaintiff with notice and opportunity to challenge any false information before it was disclosed to the ILETSB.

18. Shortly before returning from FMLA and paid sick leave, Chief ODUM made the decision to reassign Plaintiff from the Southeast District, which was 20 minutes from his home and where he had been assigned since he began working for Defendant, to the Northwest District which was approximately a 90-minute commute from his home.

19. ODUM also made the decision to assign another Deputy Commander from the Northwest District which was close to his residence to the Southeast District, which made that Deputy Commander's commute much longer. ODUM's decision to have Plaintiff and the Deputy Commander switch districts was based on retaliation for exercising their rights under the FMLA and the right to take vested paid sick time off.

20. ODUM also made the decision to remove many of Plaintiff's duties as he was planning to return from his FMLA and paid sick leave, including responsibility for the drone program, the FTO program, and department policy updates. The drone program involved extra compensation.

21. When Plaintiff applied for FMLA, CHIEF ODUM demanded that Plaintiff provide her with his FMLA medical documentation. When Plaintiff objected to her improper request ODUM became angry though she had no right to see this medical documentation which would violate his rights to privacy.

22, Plaintiff provided all requested medical information to the FOREST PRESERVE DISTRICT's HR department before his FMLA was approved and was not required to provide medical documentation to ODUM as this would have violated his right to privacy.

15

23. ODUM also took these actions against Plaintiff as retaliation against Plaintiff for his refusal to provide her with his medical documentation which would have violated his right to privacy.

24. Plaintiff felt compelled to resign from his position with the Forest Preserve District based on ODUM'S forced transfer of Plaintiff to a different District, removal of some of his duties, pressure to divulge medical documentation, and ODUM's threats that she intended to punish Plaintiff for taking FMLA leave and exercising his property right to take accrued and vested paid time off and paid sick time off.

25. On May 25, 2025, at 3:25 p.m., Plaintiff submitted his resignation to CHIEF ODUM. After ODUM accepted his resignation, she claimed for the first time that there were IAD investigations against Plaintiff which had not been previously disclosed to him.

26. ODUM also told Plaintiff that a complaint would be filed against him with the Illinois Law Enforcement Training and Standards Board (ILETSB) accusing Plaintiff of resigning when he was aware that he was under investigation.

27. Plaintiff was never informed of any IAD complaint, proposed discipline, or investigation before notifying Defendants of his notice of resignation.

28. Plaintiff immediately informed ODUM on May 25, 2025, that he had no prior knowledge of any complaint or active investigation against him at the time he submitted his resignation. He further informed ODUM that any complaint to ILETSB stating that he resigned with knowledge of a pending complaint and investigation would be false, would damage his career, and constituted additional harassment from her.

29. ODUM notified ILETSB falsely stating that Plaintiff resigned with knowledge that

he was under investigation for IAD complaints despite knowing that Plaintiff was never informed of any pending IAD complaint at the time nor having knowledge of any pending investigation when he resigned.

30. ODUM failed to provide Plaintiff with proper notice or opportunity to challenge the alleged complaints and investigations that were allegedly occurring before he submitted his resignation and before ODUM falsely informed ILETSB that Plaintiff had resigned while complaints and investigations were pending against him.

31. Plaintiff subsequently learned after his resignation that ODUM directed Deputy Chief Muniz to investigate Plaintiff's use of FMLA. There was no basis for this investigation as Plaintiff provided proper medical documentation to HR showing that he was taking FMLA because of his hand surgery and his FMLA was approved after a review of his application for FMLA.

32. There was no evidence to prove that Plaintiff misused his FMLA leave, nor engaged in any other misconduct that would warrant any notice to ILETSB, nor was Plaintiff made aware of any such complaints until after his resignation notice.

33. Employees who engaged in misconduct, falsified official documents, and were suspended, were not reported to ILETSB by ODUM. These officers had not taken FMLA leave nor refused to provide their personal medical documentation, or exercised their rights to privacy by refusing to provide ODUM with their private medical documentation.

34. Complaints against police officers that are reported to the ILETSB are disclosed to to prospective employers during the hiring process when they submit documentation indicating their intent to hire a police officer. This is part of the vetting process for hiring police officers in Illinois.

35. A police department must submit documentation to the ILETSB explaining why it

intends to hire a police officer who has a complaint filed against them with the ILETSB. Law enforcement agencies often will not hire a police officer who has a complaint filed against them with ILETSB.

36. Plaintiff was recommended for a promotion to Commander at another police department where he had been working part time in 2025. Plaintiff lost this promotion because ODUM filed a false complaint against Plaintiff with the ILETSB.

37. The ILETSB discloses all complaints filed with the ILETSB to any hiring police department. ODUM knew that filing this stigmatizing complaint against Plaintiff with ILETSB would damage Plaintiff's career as a law enforcement officer, and ODUM knew her complaints filed with ILETSB were false as Plaintiff had no knowledge of any pending complaints or investigations when he gave notice of his resignation.

38. The complaint Defendants filed with the ILETSB by ODUM damaged Plaintiff's reputation and caused him professional and personal embarrassment and created a stigma on what had been an unblemished record. The complaint also deprived him of opportunities for promotion.

39. Plaintiff has no way to challenge the complaint ODUM filed with the ILETSB. ODUM's actions have damaged Plaintiff's ability to pursue his chosen career as a law enforcement officer and limited his career opportunities.

40. After Plaintiff engaged in protected activity that was guaranteed to him by federal law, FMLA, rights to paid time off which benefits are protected by state and county law and regulations, and his rights to privacy, ODUM used her position as Chief of Police to retaliate against him by reassigning him to a location with a much longer commute, removing job duties and responsibilities, and filing a complaint with the ILETSB which falsely accused him of resigning with

18

knowledge that of a pending investigation against him. These acts materially affected the terms and conditions of his employment and professional reputation.

41. As a direct and proximate result of ODUM's retaliatory actions which violated his rights under 42 USC §1983, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, damage his reputation, and suffered emotional distress.

42. ODUM's actions violated 42 USC §1983.

43. Plaintiff demands trial by jury.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant and that Plaintiff be awarded the following relief:

    A. Actual damages in an amount in excess of Two Hundred Thousand Dollars ($200,000.00) and prejudgment interest;

    B. Compensatory damages in an amount in excess of $200,000;

    C. Punitive damages against Odum in her individual capacity in an amount in excess of $200,000;

    D. Ordering Defendant to withdraw the complaint filed with the ILETSB and remove all discipline in Plaintiff's personnel file;

    E. Attorney's fees and costs; and

    F. Such other relief as this Court deems appropriate.

*Arthur R. Ehrlich*

Arthur R. Ehrlich of the Law Offices of
GOLDMAN & EHRLICH, CHTD., as attorney
for Plaintiff RUSSELL W. BLANCHARD

Arthur R. Ehrlich
Law Offices of Goldman & Ehrlich
53 West Jackson Blvd., Suite 815
Chicago, Illinois 60604
(312) 332-6733
arthur@goldmanehrlich.com